JOSE MERCED GONZALES, Appellant, v. MANUEL GALLEGOS, Appellee.

ROMAN DODGE, Appellant, v. PRACIDO BACA Y. BACA, Appellee.

JUAN MARGUES, Appellant, v. PASQUAL BACA, Appellee.

LEOPOLDO SANCHEZ, Appellant, v. DESIDERIO GALLEGOS, Appellee

### SYLLABUS BY THE COURT.

1. PUBLIC OFFICE—ELECTION CONTEST—NATURE OF PROCEEDING.—An election contest for a county office under sections 1726-1736 C. L., 1897, is a special statutory proceeding, and not a "civil action" within the meaning of the code.

2. ANSWER—STRICKEN OUT WHEN.—Where the answer is not served at the time and in the manner provided by section 1732, it is not error to strike it from the files upon motion.

3. APPLICATION FOR LEAVE TO FILE ANSWER—DENIED WHEN.—Where application is made for leave to serve answer after statutory period for such service has expired, it is not error to deny such application.

*Appeals* from the District Courts of Union and Guadalupe counties.  Affirmed.

Statement of the case by the court.

By stipulation, the above four cases are to be considered as one.  The facts being the same in all of the cases, the law is equally applicable to all.  A record has been filed in the first case only, but by the stipulation, this record is to be considered the record in all and the decision rendered shall apply to, and dispose of all the cases.

The above cases are election contests, brought under the statute enacted for the determination of such contests,

the same being embraced in chapter 3, title 12, Compiled Laws of 1897.

There is no dispute as to the facts concerning the proceeding in the court below, and they may be stated as follows:

First.—Manuel Gallegos, appellee, brought his action in the district court of Union county, to contest the election of the appellant, Jose Merced Gonzales, to the office of clerk of the probate court of Union county, N. M., by filing his notice of contest in the office of the clerk of the district court for said county, on the seventh day of December, A. D. 1898.

Second.—A writ of summons, and a copy of the appellee's notice of contest, were served on appellant on the fourteenth day of December, A. D. 1898, by leaving the same with the wife of appellant, at his place of residence, she being a person over the age of 16 years.

Third.—On the twenty-sixth day of December, A. D. 1898, the appellant filed his answer in the office of the clerk of the district court, and on the same day, served and delivered a copy of his said answer to the attorney of record of the said appellee, Chas. A. Spiess, Esq.

Fourth.—On the seventh day of February, A. D. 1899, the appellant filed his motion praying for leave to serve upon the appellee, in person, a copy of his answer.

Fifth.—On the tenth day of February, A. D. 1899, appellee filed his motion to strike out appellant's answer from the files in said cause and praying for judgment upon the averments contained in his notice of contest.

Sixth.—On the second day of March, A. D. 1899, the court overruled appellant's motion for leave to serve copy of his answer on appellee, and sustained appellee's motion to strike appellant's answer from the files, and rendered judgment as prayed for in appellee's said motion.

Seventh.—On the tenth day of March, A. D. 1899, appellant filed his motion praying for a new trial of said cause, which said motion was heard and overruled by the court on the twentieth day of November, A. D. 1899, and from said judgment and ruling of the court appellant brings the cause to this court on appeal.

From the record in the case of Manuel Gallegos, contestant, v. Jose Merced Gonzales, contestee, the only record filed, this controversy may be summarized as follows: The respondent in the court below, Jose Merced Gonzales, did not serve a copy of his answer upon the contestant, Manuel Gallegos, but served such copy upon his attorney of record, in said cause. Afterwards, on the seventh day of February, 1898, and not within twenty days after the date of the service of a copy of the notice of contest upon him, the appellant, Gonzales, moved the court for an order permitting him to serve the contestant, Gallegos, with his answer to the notice of contest. The refusal of the court below to grant this order, and the action of the court in striking the answer of appellant from the files and pronouncing judgment in favor of the appellee, has been assigned as error in this cause.

The following are the only assignments of error relied upon and stated in the record by counsel for appellants:

Assignment of error No. One.—The court erred in sustaining appellee's motion to strike the answer of appellant from the files of said cause, and in granting and rendering judgment for appellee as therein prayed for.

Second assignment of error.—The court erred in overruling the appellant's motion for leave to serve a copy of his answer upon the appellee, even though twenty days had elapsed since the service upon appellant of the appellee's notice of contest.

O. A. LARRAZOLO, for appellants:

Appellants respectfully submit that, an election contest under the laws of this Territory, is strictly and purely a civil action, and as such it is governed by the rules of pleading and practice as contained in the Code of Civil Pleading and Practice passed by the Legislative Assembly of the Territory of New Mexico in the year Eighteen hundred and ninety-seven, and in force at the time of the rendition of judgment herein. If this proposition be true then the court erred in striking appellants answer from the files, and in granting judgment for appellees, because it is conceded, and it so

appears from the record, that a copy of appellants answer was served upon the attorney of record of appellees, within twenty days next after the service upon appellants, of appellees notice of contest, and if this proceeding be a civil action, then the service was good; and it was upon the theory and finding of the court that an election contest is a special proceeding, and not a civil action, and as such, to be governed and tried according to the rules and provisions contained in chapter 3, title 12 of the Compiled Laws of 1884, and subsequent acts amendatory thereof, being chapter 3, title 12 of the Compiled Laws of 1897, that the service of appellants answer upon the attorneys of record of the appellees was held to be bad, and that the answer was stricken from the files, and judgment rendered for appellees.

What is a civil action, and how is that distinguished from a "special proceeding?"

"A civil action is one prosecuted for the establishment or recovery of a right, or the prevention of a wrong, or the redress of an injury. It may be instituted by governments, corporations or individuals, to enforce any remedy, or to obtain or secure any relief which the law gives to a complainant, against the defendant." 1st Wait's Actions and Def. p. 10.

"A civil action is a legal prosecution, in an appropriate court, by a party complainant against a party defendant, to obtain the judgment of that Court, in relation to some right claimed to be secured, or some remedy claimed to be given by law, to the party complaining." 1st. Wait's Act. and Def. p. 10 cited in 1st. Am. and Eng. Ency. of L. p. 178.

"The vital idea of an action is, a proceeding on the part of one person as actor, against another, for the infringement of some right of the first, before a court of justice, in the manner prescribed by the court or the law." Bouvier's Law Dict. Title, "Actions."

Again, in the common law, civil actions are, "Those actions which have for their object, the recovery of private or civil rights, or of compensation for their infraction." Bouvier's Law Dict. Title, "Actions."

"An action has been defined to be an ordinary proceeding in a court of justice, by which one party prosecutes

another party, for the enforcement or protection of a right, the redress or prevention of a wrong or the punishment of a public offense. But in some sense this definition is equally applicable to special proceedings. More accurately, it is defined to be any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree. The action is said to terminate at judgment." Estee's Pleadings —Pomeroy, 3rd. Ed. chapter 1, section 3, citing. People v. County Judge of Rensselaer, 13 How. Pr. 398.

What, in law, is a "special proceeding?"

"Remedies pursued by a party which do not result directly in a judgment, but only in establishing a right, or some particular fact, are special proceedings. They include proceedings confined to courts of justice, and from which an appeal will lie, such as proceedings instituted for the correction or revision of erroneous acts of a court, or officer appointed by a court, having particular qualifications, or occupying some particular relation to the parties or the subject matter and whose acts are in the nature of adjudications upon which the subsequent proceedings rest however erroneous they may be." Estee's Pleadings—Pomeroy 3rd. Ed. Sec. 5; Bliss on Code Pleading Sec. 1 and note 2; Porter v. Purdy, 29 N. Y. 106.

Again "actions are to be distinguished from those proceedings, such as a writ of error, scire facias, mandamus, and the like, where, under the form of proceedings, the court, and not the plaintiff, appears to be the actor." Bouvier's Law Dict. Title, "Actions" 4.

According to the foregoing authorities the true and vital distinction between a civil action and a special proceeding is that the former ends in a judgment, and at once and in the same proceeding gives and awards the relief prayed for and sought to be obtained; whereas, the latter proceeding, not being primarily intended to afford the relief ultimately desired ends its mission by simply establishing a foundation, which, itself, will be the basis of a subsequent and different proceeding, to wit: an action, which, by going to final judgment, will give the full measure of relief demanded. If, then, by the proceeding known to our law as an "Election contest," the contestant or contestee will

finally, by the judgment of the court rendered in the same proceeding, obtain the relief, right or privilege for which they are contending, to wit: the possession of a public office, together with the enjoyment of its emoluments and fees, without having to resort to any other proceeding at law, aliunde the election contest, then this proceeding, to wit, the election contest, possesses all the distinctive characteristics and properties of a civil action, and is itself one.

It is provided by our statutes that "Upon the trial of any such case of contested election, judgment shall be rendered in favor of the party for whom a majority of the legal votes shall be proved to have been cast at the election, to the effect that he is entitled to the office in controversy and for his costs. And he shall be thereupon entitled to, and hold such office, with all the privileges, powers, and emoluments belonging hereto." Section 1735 Compiled Laws of 1897.

The act passed by the Legislative Assembly of the Territory of New Mexico, in 1897, being chapter 73 of said Session Laws of 1897, and chapter 1, title 33 of the Compiled Laws of 1897, is entitled "An act to simplify procedure in civil cases."

Section I, article 1, chapter 73 of said Session Laws of 1897, being subsection 1 of paragraph 2685, Compiled Laws of 1897, says:

"There shall be in this Territory but one form of action for the enforcement or protection of private rights and the redress or prevention of private wrongs, which shall be denominated a "civil action," and the party thereto complaining shall be known as the plaintiff, and the adverse party as the defendant."

From a careful study and analysis of the foregoing authorities, and of the above cited sections of our statute laws, the conclusion is, logically, irresistible that this proceeding is a civil action.

It is provided in the Code of Civil Procedure that,—

"All service of papers, when the party to be notified has appeared by attorney, shall be made upon the attorney . . . . . . . . . . . . : where the party appears in person the service may be made in like manner on the party himself."

Sec. 2685. Subsection 101—Comp. L. of 1897.

If an election contest is a "civil action," then it is necessarily embraced and included within the operation of the provisions of the Code regulating civil procedure, unless, indeed, it be expressly exempted therefrom, by some of its provisions.

Article 11, title 33, Comp. L. of 1897, being the last article of the code regulating civil procedure, among other things, provides that, "This act shall not apply to, or in any wise affect proceeding for habeas corpus, mandamus, prohibition or quo warranto, and shall not affect actions of replevin, or writs of attachment, except as to the form of the action." Sec. 2685. Subsection 175—Comp. L. of 1897.

If the Legislative Assembly had not given expression to its intent and purpose in regard to the scope of the code in question, as it did by the enactment of the last cited section, still would there be no doubt of its evident purpose that all civil actions should be governed by its provisions; but when it went further, and by express language excluded those actions and proceedings which should be eliminated from the operation of the act, ipso facto it included all those not so enumerated; for

"No maxim of law is of more general and uniform application than 'expressio unius est exclusio alterius,' the expression of one thing excludes others. Broom in his legal maxims, p. 664, says this maxim is 'never more applicable than when applied to the interpretation of a statute.' "

On the same subject, Sedgwick in his constitutional and statutory law, says: "If a new power be given by an affirmative statute to a certain person, all other persons are, in general, excluded from the exercise of the power, since 'expressio unius est exclusio alterius.' " In re, Attorney Genl. of New Mex. 2. N. M. 56.

"In interpreting clauses we must presume that words have been employed in their natural and ordinary meaning." Says Marshall, Ch. J.: "The framers of the Constitution, and the people who adopted it, must be understood to have employed words in their natural sense, and to have understood what they meant." And so of statutes. Cited in

Cooley's Const. Lim. 4th. Ed. p. 72 and note 1 citing; Gibbons v. Ogden, 9 Wheat., 188, and others; Story on Const., Sec. 453; Sec. 2900, Subdiv. First. Comp. L. 1897.

It is not necessary, however to multiply authorities on statutory construction, because the true intent and purpose of the Legislative Assembly in adopting the code of civil procedure is further expressed, thus:

"An Act entitled, An act relating to forms of pleadings, approved February 7th, 1889, and all other laws and parts of laws in conflict with this Act are hereby repealed."   Sec. 2685.   Subsection 180. Comp. L. 1897.

Again: "This Act shall go into effect on the first day of August next, after its passage, and it shall not be necessary to change the pleadings in any cause now pending or brought before that date, but the procedure and practice in such cases shall thereafter be made to conform to this act as far as possible."   Sec. 2685, subsection 181. Comp. L. 1897.

The provisions of subsection 101 of section 2685 of the Compiled Laws of 1897, in relation to the service of papers "upon the attorney," and of the manner of making such service, are in direct conflict with the provisions of section 1237 and of section 1898 of the Comp. Laws of 1884, relating to the same subjects, being the same sections of the statute carried into the Compiled Laws of 1897 as sections 1732 and 2962 respectively, and to that extent, therefore, are repealed by the provisions of the act of 1897 above referred to.

And whether this proceeding be considered to be an action at law or a suit in chancery, the provisions of the code of 1897, regulating civil procedure, will apply and control, for it is so provided. Sec. 2685. Subsection 33. Comp. Laws 1897.

Courts derive their jurisdiction in cases properly coming before them, from either of two sources: First, from the statute law of the land, second, from the common law of England as the same has been accepted and practiced in this country; it follows, therefore, that any action or proceeding, between litigants, that is not authorized by statute, and which finds no precedent in the common law, can

not be entertained by the courts either as an action at law or as a suit in chancery.

At common law the only method known by which the right of any person to hold a public office, or a franchise emanating from the government, could be enquired into was by quo warranto. People v. Scannell, 7 Cal. 432; 5 Wait's Act. and Def. 258—Title "Quo Warranto"; People v. Vanslyck 4 Cow. 297; 6 Am. and Eng. Ency. of law p. 386 and authorities cited; Akin v. Matteson, 17 Ill. 167; Grant v. Chambers, 34 Tex. 573.

And it is held that the writ will not issue merely for the determination of a private right, wherein the whole community are not interested, but otherwise where the people are concerned. 5 Wait's Act. and Def. 260 sec. 3; Ramsey v. Carhart, 27 Ark. 12; People v. Ridgley, 21 Ill. 65; People v. Flanagan, 66 N. Y. (21 Sick) 238.

And an action in the nature of quo warranto proceedings must be brought in the name of the government, and by its proper officer. Bouvier's Law Dict. Title "Quo Warranto"; 6 Am. and Eng. Ency. of Law, p. 386 and authorities cited; 5 Wait's Act. and Def. 262 sec. 5; People v. Pratt, 15 Mich. 184; Patterson v. Hubbs, 65 N. C. 119; State v. Schuierle, 5 Rich. 299; People v. Fairchild, 67 N. Y. (22 Sick.) 334; 8 Hun. 334; Territory v. Lockwood, 3 Wall. (U. S.) 236; State v. Palmer, 24 Wis. 63.

The essential province of the proceeding by quo warranto being to oust an usurper from a public office, and not to induct any contesting candidate thereinto, statutes have been passed by the various states of the Union, as well as by Congress, peculiarly adapted for the purpose of ascertaining who is entitled, under the result of a popular election, to hold office, and to enjoy its emoluments, and these statutes have been variously construed, to meet the evident intent of the Legislative authority.

Accordingly, it has been held that an election contest, is neither an action at law, nor a suit in equity, but that it is a special proceeding. Williams v. Lane, 52 Tex. 335; Wright v. Fawcett, 42 Tex. 203; Moore v. Hoisington, 31 Ill. 243; Moore v. Mayfield, 47 Ill. 167; Saunders v. Haynes, 13 Cal. 145; Schwarz v. Co. Court, etc., 23 Pac. 85—14 Colo.

These decisions however, must be considered in the light of the statutes under which they were rendered, or the constitutional provisions that controlled them. Accordingly, a careful inquiry into the statutes of Texas and Colorado governing and controlling election contests, will disclose the fact that under such a proceeding, the tribunal given authority of the same, sits as a canvassing board and is clothed with authority simply to declare who, under a legal count of the legal votes cast at an election, has received a majority of such votes and is entitled to the office in question; but beyond this, under that proceeding, the court is not clothed with jurisdiction to render judgment for the possession of the office, or the enjoyment of its emoluments, but leaves the successful party to pursue his proper remedy by means of an appropriate action in the courts, in case the opposing party be in possession of the office and should refuse to voluntarily surrender it upon the findings of the court in the election contest proceedings. The distinctive characteristic of an "action," to wit: the feasibility of carrying the proceeding to a "final judgment," is wanting, but, in the language of the authorities above cited (q. v. p. 7) they are judicial adjudications upon which subsequent proceedings rest, and therefore special proceedings, having no greater force, as adjudications, than would the certificate of election issued by the board of county commissioners, sitting as a board of canvassers, in the first instance. See Texas cases above cited, and Sec. 1680 Mill's Annotated Statutes of Colo.

In California, an election contest case is said to be a special proceeding, because it is so provided in the constitution of that state. See Saunders v. Haynes, Supra, 13 Cal. 145.

Again, it seems to be plain that under the California statute, the purpose of an election contest is, not to adjudicate the right to the possession of a public office, but simply to test the right of the incumbent or person in possession thereof to hold it. For it is provided at chapter 6, entitled "Contesting elections other than for members of the Legislature, Governor and Lieutenant-Governor."

"Section 1st. That any elector of the proper county

may contest the right of any person declared duly elected to any office to be exercised in and for said county." See Saunders v. Haynes, supra.

The New York code of procedure thus defines an action:

"An action is an ordinary proceeding in a court of justice by which a party prosecutes another party, for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."

Immediately after this section defining what an action is, the code proceeds as follows:

"Sec. 3334. Every other prosecution by a party for either of the purposes specified in the last section is a special proceeding." Bliss on Code Pleading, Sec. 1 note 2.

It seems that, at the time when the decisions in Moore v. Hoisington and Moore v. Mayfield, supra, were rendered by the Supreme Court of Illinois, there was not in that State any laws regulating election contests, or if there was one, it must have been subsequently amended, or a new one adopted which was in force in A. D. 1872, and which the Supreme Court of that State was called upon to construe in the sense of whether a proceeding instituted under its provisions was a civil action or not. The provisions of that statute bear so marked a similarity to those of our own, that we here set out some of them, side by side with others of our own statute.

Illinois Statute in force A. D. 1872.

Sec. 213, provides that the person desiring to contest such election shall, within thirty days after the person whose election is contested is declared elected, file with the clerk of the proper court a statement in writing, setting forth the points on which he will contest the election, which statement shall be verified by affidavit, in the same manner as bills in chancery may be verified.

Sec. 115. Evidence may be taken in the same manner and upon like notice as in cases in chancery.

Sec. 116. The case shall be tried in like manner as cases in chancery.

Sec. 119. In case the contest is in relation to the elec-

tion of some person to an office, the judgment of the court shall declare as elected the person who shall appear to be duly elected.

Sec. 123.    In all cases of contested elections in the several circuit courts or county courts, appeal may be taken to the Supreme Court in the same manner and upon like conditions as is provided by law for taking appeals in cases in chancery from the Circuit courts.

New Mexico Statutes in force in March 2nd, 1899.

Sec. 1726, provides that contest for county offices shall be commenced in the district court, by filing a notice of contest within thirty days after the day of which the county commissioners count the votes, and that a copy of said notice shall be served on contestee in manner and at the same time as process in civil suits.

Sec. 1734.    As to the taking of testimony in such case, among other things says "Such testimony shall be taken upon reasonable notice to the respective parties, by the officer taking the same, and the same shall be taken in the same manner as testimony is now required by law to be taken in suits in equity."

Sec. 1733.    Provides that such cases shall be tried in the same manner as cases in chancery.

Sec. 1735.    Upon the trial of any such case of contested election, judgment shall be rendered in favor of the party for whom a majority of legal votes shall be proved to have been cast at the election, to the effect that he is entitled to the office in controversy, and for his costs.   And he shall be thereupon entitled to, and hold such office, with all the privileges, powers and emoluments belonging thereto.

Sec. 1736.    Either party feeling himself aggrieved by any judgment rendered under the provisions of this act, may take an appeal therefrom to the Supreme Court, in the same manner that appeals are now taken from decrees in equity. But no such appeal shall operate as a stay of the execution of the judgment, except as to costs.

Previous to the enactment of the law from which the foregoing sections have been cited, the Supreme Court of

Illinois had decided that a case of election contest was, neither, an action at law, nor a suit in equity. See Moore v. Hoisington, and Moore v. Mayfield, supra.

But, after the passage of the said act, after citing the sections of the law above set out, and in construing the same, the court says:

"From these citations, the conclusion is reasonable that the proceeding to contest an election is, to all intents and purposes, a chancery proceeding, and subject to all the rules governing them, and it was so held by this court in Talkington v. Turner, 71 Ill. 234." Dale v. Irwin, 78 Ill. 170.

In Dakota an election contest is tried in 'the same manner as civil actions. Newton v. Newell, 6 N. W. Rep. 346.

It is respectfully submitted that, under the laws of our Territory, a case of election contest is so far a complete action that it not only affords full and complete relief in itself, by rendering final judgment upon the matter at issue between the litigants, in putting the successful party in possession of the office in dispute, but it even provides that an appeal will not suspend the operation of the sentence, except as to costs. Appellants, therefore, say that, this being a civil action, it is to be governed and controlled by the rules of practice set out in the code, and that the service of appellants' answer on the attorney of record of appellees was correct and legal, and that the court erred in holding otherwise.

Proposition under second assignment of error:

The court erred in overruling appellant's motion for leave to serve a copy of his answer on the appellees, in person, though twenty days had elapsed since the service upon appellants of a copy of appellees' notice of contest.

If this proceeding is a civil action, the appellants had a right, under the code, to amend the service of their answer as prayed for. See Subsections 81-82 and 95, of section 2685, Comp. L. of 1897; 6 Am. and Eng. Ency. of L. p. 407; Kneass case 2, Pars. (Pa.) 553; Brightly's El. cases, 337; Gibbons v. Shepherd, 65 Pa. St. 20; Marshall v. Baldwin, 11 Phila. 383; Buckland v. Gait, 23 Kan. 327.

And even to file a supplemental answer; see subsection 87, section 2685, Comp. L. 1897.

But even if an election contest case should be held to be a special proceeding under our laws, the court has the right to, and in the exercise of a sound discretion, and in furtherance of the ends of justice should, allow such amendment of service to be made.

It is true that it has been held in this Territory that election contests are special proceedings, and that "These statutory provisions as to the time of filing and serving the notice of contest, answer and reply are, in effect, statutes of limitation taking from the judge all discretion as to extending the time," Bull v. Southwick, 2 N. M. pp. 363-365. And followed in Vigil v. Pradt, 5 N. M. 161.

It is to be borne in mind, however, that these decisions were both rendered long before the adoption of the code regulating civil procedure, and of that clause contained in the code providing that all papers which by law were required, at that time to be served on the parties themselves are by the code now required to be served on their attorneys of record; nor was there, in this Territory, any statute defining a civil action.

Appellants respectfully submit that, in so far as the above cited decisions from New Mexico hold that the statutory provisions as to the time of the filing and serving of the answer and reply are, in effect, statutory limitations taking away from the court all discretion as to any extension of time, they misapprehend the true intent and purpose of them; it may not be denied that a proceeding of this kind is one which should be speeded with all possible diligence; but to say that no time shall be allowed to correct an error, which if allowed to stand would defeat the ends of justice and the very purpose for which the law was made, is not, we submit, sustained by the authorities.

It is held that in proceedings which are conducted under statutes that are special and summary in their nature, a strict observance of the statute, so far as regards the steps necessary to give jurisdiction, must be required. Schwarz v. County Court, Garfield Co. (Colo.) 23 p. 84; Sedg. St. and Const. Law 299; Dorsey v. Barrey, 24 Cal. 449; Casgrave v. Howland, Id. 457; Norwood v. Kenfield, 30 Cal.

393; Loomis v. Jackson, 6 W. Va. 613; Buckley v. Lowry, 2 Mich. 418; Fairbault v. Hulett, 10 Minn. 38 (Gil. 15); High, Extr. Rem. Sec. 781; Keller v. Chapman, 34 Cal. 635; Garretson v. County of Santa Barbara, 61 Cal. 54; Quimbo Appo v. People, 20 N. Y. 531.

But this is the extent to which the authorities go, in requiring a strict performance of statutory requirements in special cases, in matters necessary to give "jurisdiction" to the court, within the time limited by law, and to this state, it is respectfully submitted, that a special statute does not differ from any other statute of limitation in any kind of action. But the filing or service of, either, the answer or replication in an election contest is not, under our laws, necessary to give jurisdiction to the court, but the filing and service of contestant's notice, within the time prescribed by the statute, is alone sufficient to give the court jurisdiction. See section 1728 Comp. Laws of 1897.

McCrary on Elections says: "It may be stated, as a general rule, recognized by all the courts of this country, that statutes providing for contesting elections are to be liberally construed to the end that the will of the people in the choice of public offices may not be defeated by any merely formal or technical objections, immaterial defects in pleadings shall be disregarded, necessary and proper amendments should be allowed as promptly as possible." McCrary on Elect. 3rd Ed. Sec. 396.

Again—"In most of the states of the Union there are statutes to regulate pleadings, under which courts are authorized to allow amendments where petitions or other pleadings are found to be defective, under most of these statutes a petition in a contested election case may be amended. In the absence of any statute of this character, the court trying a case of contested election may, under its general common law power, permit such petition to be amended, and an amendment ought to be allowed whenever the court, in the exercise of a sound discretion, shall be of opinion that the ends of justice would be thereby prompted." Id. Sec. 406; 65 Pa. St. 35; Paine, Elect. Secs. 827-840 and cases cited.

The Supreme Court of Montana says: "We have upheld in a liberal spirit the action of Courts in permitting

amendments to pleadings and executing the provisions of the code in civil procedure; under the authorities this principle embraces election contest." Heyfron v. Mahoney (Mont.) 24 P. R. 93; Dale v. Irwin, 78 Ill. 170.

The Federal Statutes relating to election contests for members of the House of Representatives of the United States, is in some particulars, similar to our own, and in regard to the manner of instituting the contest, the time within which it must be commenced, the manner of service of pleadings, the answer of the contestee (except as to the time of answering) and service thereof on contestant, is almost identical with our statute; that statute contains no provisions as to the amendment of pleadings, yet, in cases arising under its provisions not only amendments to pleadings are allowed, but even an extension of time beyond that prescribed by the statute for the filing of pleadings has been allowed, and in construing it, the following language is used: "This statute shall receive a reasonable construction; one that will carry out and not defeat its spirit and purpose."

Wright v. Fuller—1st Bartlett, 112.

The ruling of the Supreme Court of Pennsylvania in the case of Stevenson v. Lawrence, cited by Prince, chief justice, in Bull v. Southwick, 2 N. M. 381 is worthy of consideration in this case. That was also a case of an election contest, and upon objection that the case had not been tried at the next term of the court after the election had been held, as was required by the provisions of the statute, and and that it could not be tried at the next succeeding term for want of jurisdiction, that court says: "The design of the law is to secure an investigation of the matter in which the citizens generally, and the candidate claiming title to the office by election are deeply interested. Questions are involved in such an issue of the gravest importance, affecting alike the highest principles of honesty and fair dealing between man and man, the purity of the ballot-box, and the vindication of the elective right of the citizens of the commonwealth; to guard these rights, each of them sacred and worthy of legislative protection, the Courts are enjoined to investigate the merits of the case, and finally determine the same according to law. Is the law to be regarded as a dead

letter? Are the citizens and contestants alike to be turned
away and told that the stroke of the clock has paralyzed the
arm of the court, and that they must go without remedy for
any alleged violation of public and private rights, because
that which was not of the essence of the thing to be done
had not been complied with by the officer of the law, either
with or without cause? I think not. I can gather no such
meaning from the act, and regard the command "as to time,"
only in the light of an "injunction to the judges to speed
the cause," and at the next term, if possible, to fulfill the material
requirements of the law, by finally determining the case
upon its merits. Any other view, it seems to me, reverses the
natural order of things; prefers the unimportant to the
material; gives to the minor consideration, namely, the time
within which a decision is to be rendered, precedence of the
more substantial and worthy matters of the law under con-
sideration, for, certainly, it is far more essential that the
courts shall decide the main question, than allow it to fall
dead before the judges, who are enjoined to decide upon it
finally, and upon its merits, by language quite as explicit as
that used to indicate the time within which it ought to be
determined."

Stevenson v. Lawrence Penn.   Cited in Bull v. South-
wick.   Supra.

Mr. McCrary in his work on elections, cites an opinion
of the judges of the Supreme Court of Maine (not then re-
ported) in answer to questions submitted by the governor
of that state, growing out of the election and returns of
members of the legislature, which, as that author says, is im·
portant as illustrating the doctrine that statutes regulating
elections are to be construed, if possible, so as to give full
effect to the will of the electors as expressed by their bal-
lots.

Among other things the judges say: "If it appears to
the House of Representatives that there was an election of
Representatives from any district, in fact, they should ad-
mit the persons·elected to their seats, as though no return
thereof was made to the Secretary of State. The Represen-
tative is not to be deprived of his rights because election
officers have neglected their duty." (Query.   Shall a person

duly elected to an office be deprived of his rights because his attorney made a mistake, granting that he did make a mistake, which, however, could be easily rectified?)

And upon the general subject of the spirit in which election laws should be interpreted and executed, the judges say:

"This government rests upon the great constitutional axiom that all power is inherent in the people. It is a government of the people, by the people, and for the people, and, if administered in the spirit of its founders, it shall not perish from the earth. Its constitution was formed, to use the apt expression of one whose memory is embalmed in the hearts of his countrymen, by plain people, and a plain people must administer it. The ballot is the pride as well as the protection of all. It is the truest indication of the popular will. The official returns required from the municipal officers of the several plantations, towns, and cities are and will be made by plain people, and made, too, in the hurry and bustle, and excitement of an election. They are not required to be written with scrupulous nicety of the writing master, or with the technical accuracy of a plea in abatement. A sentence may have been ungrammatical, the spelling may deviate from the recognized standard, but the returns are not brought to naught because the penmanship may be poor, the language ungrammatical, or the spelling erroneous. It is enough if the returns can be understood, and, if understood, the full effect should be given to their natural and obvious meaning. They are not to be strangled by idle technicalities, nor is their meaning to be distorted by carpings and captious criticisms. When that meaning is ascertained there should be no hesitation in giving it full effect." McCrary on Elections, 2nd. Ed., Sec. 554.

CHARLES A. SPIESS, LONG & FORT for appellees.

The contest proceedings in this cause were commenced under sections 1726 to 1736 inclusive of the Compiled Laws of 1897.

Section 1726 provides that all contests for the offices of the officers of the different counties in this Territory shall

be commenced in the district court for the county in which the contest is made.

Section 1729 provides that the respondent shall file his answer to the notice of contest and serve a copy thereof on the contestant within twenty days from and after the service of such notice of contest upon him; and that any material fact alleged in the notice of contest not specifically denied by the answer within the time aforesaid shall be taken and cor :idered as true.

Section 1732 provides that copy of the notice of contest, answer and reply shall be served respectively in the same manner as process is now by law required to be served in an action at law.

In this cause the respondent in the court below, Jose Merced Gonzales, did not serve a copy of his answer upon the contestant, Manuel Gallegos, but served such copy upon his attorney of record in said cause. Afterwards, on the 7th day of February, 1898, and not within twenty days after the date of the service of a copy of the notice of contest upon him, the appellant, Gonzales, moved the court for an order permitting him to serve the contestant, Gonzales, with his answer to the notice of contest. The refusal of the court below to grant this order, and the action of the court in striking the answer of appellant from the files and pronouncing judgment in favor of the appellee, has been assigned as error in this cause.

As early as 1882, in the case of Bull v. Southwick, statutes regulating election contests were before this court for construction, and Associate Justice Bristol who handed down the opinion of the court in that case said: "It is also my opinion that the very object of the statute in regard to the pleadings and practice in contested election cases is to afford and at the same time to compel the observance of a speedy mode for conducting and terminating such cases. Its language is plain and free from all ambiguity. There is no room for mistaking its purport and meaning, and I cannot conceive of any reasonable excuse for not following its provisions by either party.

"These statutory provisions as to the time of filing and serving the notice of contest, answer and reply are in effect

statutes of limitation, taking from the judge all discretion as to extending the time." Bull v. Southwick, 2 N. M. 321.

In 1889 these same statutes were again considered by this court in the case of Vigil v. Pradt, 5 N. M. 161.

That case is on all fours with the one at bar. There service of the answer was attempted but not made on the contestant within twenty days after the service of notice of contest, and in that case there was also a motion made by respondent asking leave to serve a copy of the answer to the notice of contest, which motion was refused, as was done in the case at bar. Also in that case the answer of respondent was stricken from the files, and judgment rendered in favor of the contestant upon the averments contained in the notice of contest, as was done by the district court in the case at bar.

The opinion of the court in Vigil v. Pradt is conclusive of all the questions raised by appellant, Gonzales, in this case. In that case the court said:

"The plain language of the statute (section 1235) is: 'The respondent shall file his answer to the notice of contest, and serve a copy thereof on the contestant within twenty days,' etc. There is no ambiguity about this phraseology. It requires, not the filing alone, but both the filing and service by copy. Should the court have permitted service asked at a later day, the plain words of the statute are that service shall be made in twenty days—not twenty days or as can be thereafter, or at some other time, but within twenty days. If this were an original and open question, to be now decided by the court for the first time, the argument maintaining the statute to be mandatory would be considered as of great force. The pleadings and practice are fully provided for in the statute, and the same in all particulars specified, so that the proceeding is a special one and complete within itself. The remarks made by Mr. McCrary in his work on Elections (section 392) are applicable here: 'Promptness in commencing and prosecuting the proceedings is of the utmost importance, to the end that a decision may be reached before the term has wholly or in great part expired.' * * * Believing the construction given to the statute in Bull v. Southwick to be founded in sound principles, it is our duty to follow it."

Appellant in his brief filed in this case attempts to dis-

tinguish the case of Vigil v. Pradt from the one at bar, upon the ground that since the decision of Vigil v. Pradt the New Mexico Code of Civil Procedure was enacted, and that under the provisions of that code "All service of papers when the party to be notified has appeared by attorney shall be made upon the attorney." He argues that the provisions of the Code regarding service of papers being in conflict with those provisions of the election contest statutes which require the answer to be served upon the contestant necessarily repeals those provisions.

The Code of Civil Procedure, however, only applies to civil actions, and has no reference whatever to special statutory proceedings such as election contests.

This has uniformly been so decided, whenever the question has been presented for adjudication, and in states wherein a Code of Civil Procedure similar to the one adopted in New Mexico is in force.

In the leading case of Dorsey v. Barrey, 24 Cal. 449-52, the court says: "After the entry of the judgment in favor of Barrey, on the sixth of November, he objected, at each stage of the proceedings, to the further action of the court in the premises. The proceedings were instituted and conducted under the provisions of the Act of 1850, and the amendments thereof (Wood's Digest, 380-2). The cause is not one of which the court had jurisdiction by virtue of its organization, but it falls within the class of 'special cases' provided for by section 9 of article 7 of the Constitution, the jurisdiction of which may be conferred upon that court by the Legislature. In Saunders v. Haynes, 13 Cal. 150, its said that 'the statute of 1850 creates a special proceeding wholly distinct in form and substantially different from the common law.' The Act itself provides a complete mode of procedure, leaving but little, if anything, dependent upon implication or the common law powers of the court.

"The written statement of contest, the filing of it in the clerk's office, the fixing of the time of hearing, the process and its service, the attendance of witnesses, the continuances, the hearing by the court, fees of officers and witnesses, the liabilities of the parties therefor, the judgment for costs and the manner of collecting the same, the dismissal for insuffi-

ciency of the proceedings or for want of prosecution, the judgment and the appeal therefrom, are all specially provided for in the Act. One of the usual rules of all courts sitting in the trial of actions does not prevail here. A judgment by default or *nil dicit* can not be rendered. The court must proceed to hear the proofs and allegations of the parties, and without regard to the allegations of the contestant or the default of the defendant, if the contestant does not offer his proofs the proceedings must be dismissed. Searcy v. Grow, 15 Cal. 117. No provision is made for taking depositions, nor for any of those proceedings which, in an action between the parties, would result in delays and continuances. In special proceedings, the court vested with jurisdiction by the statute possesses only such powers as the Act creating the special case has conferred, and in the exercise of those powers it is limited by the terms of the Act. People ex rel. Whitney v. Board of Delegates, 14 Cal. 503.

"It is held also, in Saunders v. Haynes, that 'the statute evidently intended to afford a new and summary remedy in cases of contested elections' and it is a cardinal rule, that in summary proceedings, the law must be strictly pursued." Sedgwick on Stat. and Const. Law, 319.

In Louisiana it was held that "the contesting of votes is a judicial function only so far as made such by special statute." Tax Payers v. O'Kelley, 49 La. Ann. 1039.

In Texas it was held that "It is true that the district court has jurisdiction as has been often held to try the right to an office. To decide the result of an election is a question of a different character 'part of the process of political organization' and 'not a question of private right.' Huselman v. Rems, 41 Penn. St. Reps. 396. * * * * Where the law has provided a mode of deciding cases of contested elections designed to be final, the courts have no authority to adjudicate such cases other than the law may give to them. * * * * The law has provided in what way elections may be contested, with the evident design that no other shall be pursued. The jurisdiction of the district court was dependent upon compliance with the prerequisites prescribed by the law, and as the record does

not show such compliance we think the case was correctly dismissed." Wright v. Fawcett, 42 Tex. 203.

And in the case of Rogers v. Johns, 42 Tex. 339, that court again held that "the determination of the result of an election is not a matter pertaining to the ordinary jurisdiction of the law in courts of justice. It is in the nature of a political question, to be regulated under the Constitution by the political authority of the State."

In the case of Williamson v. Lane, 52 Texas, 335, the question for decision was whether an appeal would lie to the Supreme Court of Texas from the judgment of the district court in an election contest case. In handing down the opinion of the court in that case, Moore, Chief Justice, said "By the present Constitution of the state the jurisdiction of this court is limited 'to civil cases' of which the district courts have original or appellate jurisdiction. To justify, then, this court in taking jurisdiction of this appeal it must appear that ths proceeding involves the determination of one of the enumerate subjects of which the Constitution gives the district court jurisdiction; for it is to this constitutional jurisdiction of the district court to which the clause of the Constitution quoted above must be referred. * * * *

This leads us to the inquiry, whether the contest of an election authorized by the act of May 8, 1873, regulating contested elections * * * * under and by virtue of which this proceeding was instituted and conducted, can be held to be either a suit, complaint or plea in the sense in which these words are evidently used in the Constitution? These acts themselves, plainly answer this question in the negative * * The right to an elective office, as every one will admit, results from the legally expressed choice of the majority of the electors; but how this choice is to be legally expressed and ascertained is a matter of legislative discretion and determination. If the Legislature should see fit to do so, unless restrained by some constitutional provision, it may make the declared result by the officer by whom the election is conducted final and conclusive upon all parties, or may authorize a review of the action of this officer by some other executive officer or commission, or intrust its determination to an existing judicial tribunal, if its constitutional jurisdiction will warrant its tak-

ing cognizance of it, and if not, it may, under our present Constitution create one for this purpose.   (Const., article 5, section 1.)   * * * * The court having decided in these cases (Wright v. Fawcett, 42 Tex. 203 ;Rogers v. Johns, 42 Tex. 339) that a contest of an election in the district court is not a civil case, it necessarily follows that jurisdiction of it can not be conferred upon this court without disregarding the express and positive restrictions imposed upon its jurisdiction by the Constitution.   And so, in effect, it has been heretofore held in the case of. *ex parte* Towles, 48 Tex. 418."

In the State of Colorado the provisions of the code are similar to those in force in this Territory, and by its provisions, as here, amendments to pleadings are freely allowed.   It was, however, there held that the statutes regulating election contests make no provision for the amendment of pleadings, and, therefore, the right to amend does not exist, the court saying:   "Upon the other hand, where as in Colorado the procedure is governed by a special act which does not provide for amendments, and in which the proceedings are not assimilated to some practice that does so provide it, it has been expressly held it was beyond the power of the court to permit amendments to be made."   Ford v. Wright, 13 Minn. 518; Bull v. Southwick, 2 N. M. 321; Vigil v. Pradt, 5 N. M. 161; 6 Am. and Eng. Ency. of Law. 407.

"In the case of Schartz v. Garfield County Court, 14 Colo. 44, because not necessary to the determination of that case, this court expressly declined to decide the point.   But as it held that the act furnished a complete system of procedure within itself this case gives countenance to the doctrine that in special proceedings the right to amend depends upon the provisions of the act itself.   Additional recognition is found in the decisions of this court under the eminent domain act, which prescribes a complete system of procedure for the taking or damaging of private property.   Under that act it has been decided that the code provisions on the subject of amendments to pleadings are inapplicable."   Kindel v. Burt, 23 Colo. 385.

In the state of Illinois it is provided that the notice of contest in an election contest shall be served as process in chancery cases, and unless it is so served it has been held by

the courts of that state that they had not acquired jurisdiction of the subject matter or of the parties.    Tompkins v. Wiltberger, 56 Ill. 385; Piggott v. Snell, 59 Ill. 106.

In Greenwood v. Murphy, 23 N. E. Rep. 421, the Supreme Court of Illinois said: "In this proceeding the county court acquired no jurisdiction over the person of the defendant below, the appellant here, for the reason that the summons issued out of the county court was not served upon him in the manner required by the statute.    Section 114 of chapter 46 of the Revised Statutes, being 'An act in regard to elections,' etc. (Starr & C. Ann. St. 1019), provides that 'summons shall issue against the person whose office is contested, and he may be served with process or notified to appear in the same manner as is provided in cases in chancery.'    Section 11 of the chancery act (Rev. St. C. 22) requires service of summons to be 'made by delivering a copy thereof to the defendant, or leaving such copy at his usual place of abode with some person of the family of the age of ten years or upwards, and informing such person of the contents thereof.'    The return of the sheriff indorsed upon the summons in the present case shows that it was served by reading the same to the appellant.    The statutory requirements for service of process must be strictly complied with, and the return of the officer should show such compliance; otherwise the court will not obtain jurisdiction of the person."

In the case of Moore v. Mayfield, 47 Ill. 167, a cause wherein it was attempted to sue out a writ of error from the Supreme Court to review a judgment rendered in an election contest case, the court said "It is contended that the provision of the statute is in conflict with the Constitution which declares that the Supreme Court may have original jurisdiction in cases relative to revenue and shall have appellate jurisdiction in all other cases.    * * * It is not necessary here to consider this proposition, as the proceedings to contest an election under our statute is not a case within that section of the Constitution. This is merely a statutory proceeding for recanvassing the votes cast at an election in which the illegal votes may be rejected and those which are legal may be counted and the result ascertained, and the finding of that result is not a judgment in the sense in which that term is used in the law giving

the right to prosecute a writ of error, nor is the proceeding by means of which that result is reached a case within the meaning of the Constitution. That term would refer more properly to an action at law or a suit in chancery, but this proceeding is neither one nor the other." See also Kreitz v. Behrensmeyer, 125 Ill. 141.

The above authorities also dispose of appellant's second assignment of error, wherein the district court's refusal to permit the answer to the notice of contest to be served after the statutory twenty days had expired was assigned as error.

The court could not enlarge upon the time provided by the statute. Vigil v. Pradt, 5 N. M. 161.

McFIE, J.—The questions presented by this record have been passed upon and decided by this court adversely to the contention of appellant, in the cases of Bull v. Southwick, 2 N. M. 321; Vigil v. Pradt, 5 N. M. 161; and, therefore, are not now open questions, unless they become such by the enactment of the Code of Civil Procedure. In the case of Bull v. Southwick, 2 N. M. 321, the court, in construing a statute identical in terms with the statute now under consideration, said:

"It is also my opinion that the very object of the statute in regard to the pleadings and practice in contested election cases, is to afford and at the same time to compel the observance of a speedy mode of conducting and terminating such cases. Its language is plain and free from all ambiguity. There is no room for mistaking its purport and meaning, and I can not conceive of any reasonable excuse for not following its provisions by either party. The statutory provisions as to the time of filing and serving the notice of contest, answer and reply are in effect statutes of limitation, taking from the judge all discretion as to extending the time."

PUBLIC officer: election contest: nature of proceeding.

The statutes relating to election contests in this Territory have been practically the same, since their first enactment, in 1874, so far as the provisions now involved are concerned. The sections involved in this case read as follows:

"Section 1729. The respondent shall file his answer to the notice of contest, and serve a copy thereof on the contest-

ant within twenty days from and after the service of such notice of contest upon him, exclusive of the day of such service; and any material fact alleged in the notice of contest, not specifically denied by the answer with the time aforesaid, shall be taken and considered as true."

"Section 1732. A copy of the notice of contest, answer and reply shall be served respectively in the same manner as process is now by law required to be served in an action at law."

In 1889 these statutes were considered by this court in the case of Vigil v. Pradt, 5 N. M. 161. In that case service of the answer was attempted, but not made on the contestant within twenty days after the service of notice of contest, and there was also a motion made by respondent asking leave to serve a copy of the answer to the notice of contest, which motion was refused, as was done in the case at bar. Also in that case, the answer of respondent was stricken from the files, and judgment rendered in favor of the contestant upon the averments contained in the notice of contest as was done by the district court in the case at bar. In deciding the case and re-examining the case of Bull v. Southwick, the court said:

ANSWER; stricken out when.

"The plain language of the statute (section 1235), (now section 1729) is: 'The respondent shall file his answer to the notice of contest, and serve a copy thereof on the contestant within twenty days,' etc. There is no ambiguity about this phraseology. It requires, not the filing alone, but both the filing and service by copy. Should the court have permitted service asked at a later day, the plain word of the statutes are that service shall be made in twenty days—not twenty days or as soon as can be thereafter, or at some other time, but within twenty days. If this were an original and open question, to be now decided by the court for the first time, the argument maintaining the statute to be mandatory would be considered as of great force. The pleadings and practice are fully provided for in the statutes, and the same in all particulars specified, so that the proceeding is a special one and complete within itself. The remarks made by Mr. McCrary, in his work on Elections (section 392), are applicable here: 'Promptness in commencing and prosecuting the proceedings

is of the utmost importance, to the end that a decision may be reached before the term has wholly or in great part expired. * * * * Believing the construction given the statute in Bull v. Southwick to be founded in sound principles, it is our duty to follow it."

But it is contended, on behalf of the appellants, that an election contest is a "civil action" within the meaning of the Code of Civil Procedure enacted in 1897, that the code, with its liberality as to practice and amendments, is applicable in the trial of such a case, and upon this basis, it is urged by appellants' counsel with considerable ingenuity and force that the law laid down in the decisions of this court above referred to, are not in point since the adoption of the code. The construction given the statutes providing for contesting elections by this court in the cases referred to is certainly binding upon the court, as there has not been any change in the statutes since those decisions were rendered, at least, as to the time, manner, and by and upon whom service of notice of contest, answer and reply shall be made. In this case, this court held the statute now under consideration to be mandatory wherein it provides that "A copy of the notice of contest, answer and reply shall be served respectively in the same manner as process is now by law required to be served in an action at law." It will be observed that the notice of contest, answer and reply are all to be served in the same manner, and that is, as process is served. Process in a civil or common law action means the summons or other writ by the service of which jurisdiction of the person is obtained. The service of process is practically the same under both the common law and the code, except in cases of non-residence. The sheriff of the county or other officer makes services of process. Section 2685, subsection 22, is as follows: "The summons may be served by the sheriff of the county where the defendant may be found." Subsection 23: "The summons shall be served in the manner now provided by law, for the service of process in actions at common law."

It is true there is a vague provision in subsection 23 requiring an affidavit as to service when made by other than an officer, but this can not be held to dispense with the service of a qualified officer in the service of process, except in

APPLICATION for
leave to file an-
swer; denied,
when.

possible cases where the proper officer is absent or disqualified, and this does not vary the rule as to service of process. If, therefore, the law required a copy of the answer in this case to be served upon the contestant within twenty days from and after the service of such notice of contest upon him, and such service was not made, the law requiring such service being mandatory, the court did not err in overruling the motion of the contestee for leave to serve a copy of his answer upon the contestant after the expiration of the twenty days, allowed by law, had expired. Counsel for appellants refer us to the following provisions of the code as supporting this contention: "All service of papers when the party to be notified has appeared by attorney, shall be made upon the attorney." This provision refers to papers in the case, and has no reference to the service of process, or even papers in special proceedings which the statute requires to be served as process. It does refer to motions and pleadings in the ordinary actions at law to which the code applies, but it does not apply to such papers as are designated process, under the code. The statute providing for contesting elections for county officers, and the proceedings thereunder specifically requires the answer to be served as process, in the same manner as the notice of contest which gave the court jurisdiction of the respondent, and it would be idle to contend that the notice of contest could be served upon the "attorney" under this provision of the code. The answer in this case was not served as the law required either before or after the adoption of the code, and the court properly denied the motion of the contestee in the court below, and gave judgment in favor of the contestant upon the facts alleged by the contestant.

The consideration of this case might, with propriety, end here, but in view of the earnest contention of counsel for the appellants, that the Code of Civil Procedure is applicable to this case and that the court below should have been governed by its liberal rules as to amendment and the exercise of discretion and should have extended the time of service, we have determined to examine the merits of this contention.

Subsection 179 of the code provides as follows: "The former practice in law and equity shall be retained in all cases

and proceedings not comprehended within the terms and intent of this code." This section discloses that in the mind of the framers of the Code, there might be actions and proceedings "not comprehended within the terms and intent of this code." That there were such is plain from the provisions of subsection 175 specifically exempting the actions of *habeas corpus, mandamus,* prohibition and *quo warranto* from the operation of the code and also the actions of replevin and attachment, except as to the form of the action. Thus it would seem clear that it was the intention of the legislature to limit the operation of the code to the ordinary and usual actions known to the common law, and exclude from its operation all those extraordinary actions and proceedings, providing summary remedies wholly inconsistent with the liberal provisions of the code practice and the delay incident thereto. It is true that election contest proceedings are not specifically exempted, as was *habeas corpus, mandamus* and other unusual actions, but that was unnecessary, because, it was not an action known to the common law, as were actions of quo warranto, mandamus and the others specifically exempt. It was because those actions were known to the common law, that they were specifically exempted from the operation of the new and liberal code of practice which it was realized was wholly inapplicable to those summary remedies. The statutory proceeding for contesting elections is a comparatively recent and special proceeding of a necessarily summary nature. This proceeding, while in some respects it is similar to the action of quo warranto, it does not supercede nor destroy that remedy. It is a contest between individuals usually in which the public may have little or no interest, but the public have the remedy of quo warranto by which their rights may be adjudicated. In the cases of Bull v. Southwick and Vigil v. Pradt, this court held: "This statutory proceeding between rival candidates alone is a special proceeding, complete in itself, conferring special jurisdiction on the district court, and to which the general rules and law of the court as to time of pleading and the discretion of the district judge in extending the time, do not apply." * * * * "Experience has demonstrated that, without some compulsory mode as to the time of making up

issues and their trial in contested election cases, subterfuges and delays might and would be successfully resorted to, so that a final determination could not be reached before the term of office would expire." This language if applied to practice under the code would be all the more forcible, for it will be conceded no doubt, that the summary nature of this proceeding as indicated in the above cases, would be practically destroyed if the provisions of the code were adopted as the rule of practice. Obviously then, this proceeding is one of those referred to in subsection 179, as "not comprehended within the terms and intent of this code," and as to which "the former practice is to be retained."

From the views herein expressed it follows that the learned judge who tried these cases in the court below did not err in conforming strictly to the terms of this statute and the former construction of this court, as to the proper practice under it. There being no error disclosed by the record, the judgment of the lower court is affirmed.

Parker and Crumpacker, JJ., concur.

---

[851.   August 23, 1900.]

### SYLLABUS BY THE COURT.

